Christopher M. DUFFY

v.

Kathleen E. DWYER.

No. 2003–160–Appeal.

Supreme Court of Rhode Island.

April 29, 2004.

267

Dennis J. Tente, Cranston, for Plaintiff.

Fausto Anguilla, Providence, for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, GOLDBERG, FLAHERTY,
and SUTTELL, JJ.

## OPINION

WILLIAMS, Chief Justice.

"[T]ime is money." [1]  In this case, time cost the plaintiff, Christopher M. Duffy (plaintiff), $34,189.  Without reaching the merits of the controversy, the Superior Court motion justice granted the defendant's, Kathleen E. Dwyer (defendant), motion for summary judgment.  The motion justice found that the statute of limitations had run before the plaintiff filed his complaint alleging that the defendant violated the Uniform Fraudulent Transfer Act (UFTA), G.L. 1956 chapter 16 of title 6. The plaintiff appealed the matter to this Court.  For the reasons indicated herein,

---

1. Benjamin Franklin, *Advice to a Young Tradesman, in* Bartlett's Familiar Quotations 310 (16th ed. 1992).

we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The parties before us were brought together by the actions of one man, Brian T. Evans (Evans). On October 30, 1995, plaintiff initiated suit against Evans and Evans's business partner to collect an outstanding debt resulting from the sale of a boat (boat litigation). In furtherance of the litigation, a deposition was taken on April 11, 1996, in which Evans said that he lived at 82 Model Avenue in Warwick, Rhode Island (Model Avenue property). Eight days after the deposition, on April 19, 1996, Evans executed a quitclaim deed (original quitclaim deed) conveying his interest in the Model Avenue property to defendant, who, plaintiff claims, is Evans's girlfriend (1996 transfer). The original quitclaim deed was promptly recorded with the clerk of the City of Warwick. According to plaintiff, defendant paid Evans roughly half the assessed value of the Model Avenue property. Evans and defendant continue to reside together at the Model Avenue property. Because of a defect in the original quitclaim deed,[2] Evans filed a corrective quitclaim deed with the Warwick city clerk on January 10, 1999.[3]

Presumably unaware of the 1996 transfer, or the state of Evans's finances, plaintiff entered into binding arbitration with Evans and on May 15, 2001, the arbitrator awarded plaintiff $34,189. Evans filed for bankruptcy on July 11, 2001. Five months later, on December 26, 2001, plaintiff initiated the present action against defendant, alleging that the transfer from Evans to defendant was made "[w]ith [the] actual intent to hinder, delay, and defraud the [p]laintiff." *See* § 6–16–4(a)(1). In addition to requesting monetary damages, plaintiff requested a preliminary injunction prohibiting defendant from selling or transferring the property during the proceedings.

The defendant responded by filing a motion to dismiss or, in the alternative, a motion for summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, asserting that plaintiff's claim was barred by the statute of limitations. The motion justice granted defendant's motion for summary judgment, concluding that even though the 1996 transfer lacked certain formalities, it gave the requisite notice to begin tolling the statute of limitations. As a result, plaintiff's claim was barred because it had not been brought within four years of the 1996 transfer. The plaintiff timely appealed.

# II

## Discussion

When reviewing a motion for summary judgment, it is well established that this Court will "examine the matter *de novo* and apply the same standards as those used by the trial court." *JH v. RB*, 796 A.2d 447, 448 (R.I.2002) (quoting *Tavares v. Barbour*, 790 A.2d 1110, 1112 (R.I. 2002)). We will uphold a motion justice's grant of summary judgment "[o]nly when a review of the evidence in the light most favorable to the nonmoving party reveals

---

2. The purpose of the corrective quitclaim deed was to "correct the legal description and to add the middle initial to the grantor's name."

3. Because summary judgment was granted at such an early stage in the proceedings, there are many serious allegations but very little evidence on the record before us about what defendant and Evans have done since the 1996 transfer.

no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law * * *." *Id.* at 449 (quoting *Sobanski v. Donahue*, 792 A.2d 57, 59 (R.I. 2002)). "The party opposing the motion for summary judgment 'carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.'" *Taylor v. Mass. Flora Realty, Inc.*, 840 A.2d 1126, 1129 (R.I.2004) (quoting *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003)).

## A

### Statute of Limitations

The plaintiff brought his claim against defendant under the UFTA. Section 6–16–4(a)(1) provides that a transfer is fraudulent as to a creditor when a debtor, in this case Evans, makes a transfer "[w]ith the actual intent to hinder, delay, or defraud [a] creditor * * *." Under § 6–16–4(a)(2), a transfer also is fraudulent if the debtor does not receive

> "a reasonably equivalent value in exchange for the transfer of obligation, and the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) [i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

When a creditor has been harmed by a fraudulent transfer, he or she may obtain "[a]voidance of the transfer * * * to the extent necessary to satisfy the creditor's claim," § 6–16–7(a)(1), and seek "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred * * *." Section 6–16–7(a)(3)(i). However, if the creditor does

not bring a complaint against the debtor or transferee "within four (4) years after the transfer was made * * *" then recovery is barred. Section 6–16–9(1). Section 6–16–6(1)(i) dictates that, "[f]or the purposes of this chapter," a transfer of real property has been made "when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee * * *." In other words, a transfer has occurred if, as a matter of law, defendant's interest in the property would be superior to that of a subsequent, good-faith purchaser acquiring an interest in the property from Evans.

■ The first issue is whether the 1996 transfer was valid. Relying on Rhode Island statutes, the Federal District Court explained that a "transfer of real estate is 'void' unless it is: 1. [i]n writing; and 2. [s]igned by the grantor; 3. [a]cknowledged by the grantor before a notary public or other authorized individual; and 4. [d]elivered; and 5. [r]ecorded in the [municipality] where the real estate is located." *United States v. Lombardi*, 924 F.Supp. 361, 363 (D.R.I.1996) (citing G.L.1956 § 34–11–1, G.L.1956 §§ 34–12–1 and 34–12–2).

The plaintiff asserts that the original quitclaim deed was not properly acknowledged and, therefore, the transfer was not "operative as against third parties." G.L. 1956 § 34–11–4. The Legislature has been clear that an acknowledgment

> "*need not be in any set form*, but shall be made by all the parties executing the instrument * * * [to] express the ideas that the parties were each and all known to the magistrate taking the acknowledgement, and known by the magistrate to be the parties executing the instru-

ment, and that they acknowledge the instrument to be their free act and deed * * *." G.L.1956 § 34–12–1. (Emphasis added.)

Although the narrow issue of what constitutes a valid acknowledgement is one of first impression, in *In re Barnacle,* 623 A.2d 445 (R.I.1993), we were faced with a similar question. In *Barnacle,* a married couple secured a promissory note with a mortgage on their property. Through inadvertence, the husband was the only one to sign the mortgage, which was acknowledged and recorded. Rejecting the majority view on constructive notice, we held that "[a] reasonable title searcher, when confronted with this instrument along with its purported acknowledgement, would be placed upon notice to inquire further concerning the validity of the instrument." *Id.* at 449. "To suggest that such an interest is a nullity because of the missing signature is to exalt form over substance." *Id.*

The same rationale applies here. The plaintiff argues that the acknowledgement is defective because Evans's last name was omitted. The acknowledgement in question is a single paragraph located on the same page as the original quitclaim deed, just below Evans's and defendant's signatures. The acknowledgment is signed by the notary public and states, in pertinent part: "On April 19, 1996, before me, Brian + Kathleen Dwyer, personally appeared, personally known to me * * * and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument [they] * * * executed the instrument."

Evans's first and last names were plainly stated in the first sentence of the quitclaim deed, just inches above the acknowledgment. Anyone performing a title search would locate Evans's name in the grantor's index and would be led to the properly recorded original quitclaim deed. If the searcher questioned the validity of the acknowledgement on the recorded deed, he or she could then inquire further. *In re Barnacle,* 623 A.2d at 449. Therefore, if a hypothetical, bona fide purchaser were to perfect an interest in the Model Avenue property after April 19, 1996, it would be junior to defendant's interest because the original quitclaim deed put subsequent purchasers on constructive notice that Evans had transferred the property to defendant. *Id.*

■ The plaintiff further complains that the acknowledgement is defective because it does not state that the parties are acting of their "free act and deed." Section 34–12–1. Although the original quitclaim deed and accompanying acknowledgment are not a model of clarity, the Legislature has maintained, and we have confirmed, that substance is more important than form. *Id.*; *In re Barnacle,* 623 A.2d at 449. We note that there is no indication that the transfer was anything but the result of Evans's and defendant's free act and deed. In addition, failure to include the words "free act and deed" is much less harmful than the omission in *Barnacle* of one of the parties' signatures. In *Barnacle,* the notary acknowledged that the parties were before him, that the notary knew the parties, and that the instrument was "their free act and deed;" but the wife then failed to sign the document. *Id.* at 448. In this case, defendant and Evans came before the notary and signed the document. The acknowledgement states that defendant and Evans were in the presence of the notary, the notary knew their identities and that they were executing the instrument by their signatures. The only question is whether the entire instrument should be considered void, or improperly recorded, simply because the words "free act and deed" are missing. "To suggest

that such an interest is a nullity because of the missing [phrase] is to exalt form over substance." *Id.* We hold that, because the words used put potential purchasers on notice of defendant's interest in the property, the acknowledgement was sufficient and the quitclaim deed was properly recorded for purposes of the UFTA.[4]

Therefore, plaintiff's UFTA claim against defendant is barred by the statute of limitations.

## B

### Discovery Exception

In some cases, the discovery exception found in § 6–16–9(1) can save a claim otherwise barred by the statute of limitations. The discovery exception extends the four-year statute of limitations if a creditor's claim of fraudulent conveyance is brought under § 6–16–4(a)(1) and filed "within one year after the transfer * * * was or could reasonably have been discovered by the [creditor]." Section 6–16–9(1). The exception applies only in cases in which a transfer was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Section 6–16–4(a)(1). Given the facts before us, we conclude the discovery exception does not save plaintiff's claim.

We were faced with a discovery exception question in *Supreme Bakery, Inc. v. Bagley,* 742 A.2d 1202 (R.I.2000). In *Supreme Bakery,* the creditor filed an action to collect on a promissory note on January 12, 1988. On January 29, 1988, the debtors transferred their home to themselves as tenants by the entirety. By December 29, 1992, the debtors had not paid on the

promissory note and the creditor obtained a judgment to collect. In early 1993, the creditor learned of the debtors' 1988 transfer and filed a complaint requesting that the transfer be voided because it was fraudulent. *Id.* at 1203. We concluded that "[w]hile the mere filing of the deed alone may not have been enough to alert [the creditor] to the transfer, our review of the record shows that [the creditor] had known the address of defendants' residence since the time the original summons was served in January 1988." *Id.* at 1205. In addition, "nothing suggested a course of improper conduct designed to conceal the status of [debtors'] residence" and the creditor "had been alerted at least twice" that the debtors were considering filing for bankruptcy. *Id.*

In this case, plaintiff reasonably could have discovered the 1996 transfer as soon as the original quitclaim deed was recorded. Anyone performing a simple title search on the Model Avenue property would have found the original quitclaim deed on file with the clerk of the City of Warwick. There is no indication that Evans or defendant acted improperly to conceal the status of the Model Avenue property. *Supreme Bakery, Inc.,* 742 A.2d at 1203. Nothing prevented plaintiff from inquiring about the property, which would have been wise particularly since Evans's business partner, and a codefendant in the boat litigation, had filed for bankruptcy. In addition, plaintiff himself alleges that after Evans was served with process for the boat litigation he sold the boat and used the profits to pay off a portion of the mortgage on the Model Avenue property

---

4. We note that the deed recorded with the clerk of the City of Warwick did not comport with all of the requirements set forth in G.L. 1956 chapter 12 of title 34. Although we hold that a transfer occurred under the UFTA because the original quitclaim deed put parties on constructive notice, this Court does not approve of such defects and, in the future, parties should take care to meet the requirements found in our recording statutes to avoid such problems.

rather than pay plaintiff. This, too, should have alerted plaintiff to the possibility that Evans would default on the debt and possibly find a way to dispose of the Model Avenue property to avoid paying plaintiff in the future. Moreover, plaintiff was not without options; he could have requested a prejudgment attachment on the property, pursuant to G.L. 1956 chapter 5 of title 10, during the five and a half years the boat litigation was pending. At the very least, plaintiff should have been diligent in his search to determine what assets would be available once a judgment was reached.

Based on plaintiff's allegations, it is likely that Evans transferred the property to defendant intending to defraud plaintiff. Unfortunately, we are bound by the statute of limitations that serves to protect parties regardless of their calumny. We recognize that in this case, the statute of limitations may serve to protect defendant's mortgagee as well as, potentially, Evans's bankruptcy trustee.

Thus, because the statute of limitations bars the plaintiff's claim, and the claim is not saved by the discovery exception, we affirm the motion justice's entry of summary judgment.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.