**Dorothy NERI**

v.

**ROSS–SIMONS, INC.**

No. 2004–230–Appeal.

Supreme Court of Rhode Island.

May 12, 2006.

---

**3.** We note that the plea forms the Superior Court now uses do enumerate the three spe-

cific immigration consequences.

Bernard P. Healy, Providence, for Plaintiff.

Michael A. Gamboli, Providence, for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

In this dispute between an employee and her former employer, the plaintiff, Dorothy Neri (plaintiff), appeals from the entry of summary judgment in favor of the defendant, Ross–Simons, Inc. (defendant), dismissing the plaintiff's suit in the Superior Court alleging: (1) unlawful discrimination based upon her age and gender; and (2) breach of an employment contract. This case came before the Supreme Court for oral argument on January 25, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth in this opinion, we affirm the entry of summary judgment.

## I

### Facts and Travel

According to her deposition testimony, plaintiff began working for defendant in 1992, until she was terminated in April 2001. At the time she was terminated, she held the position of call center manager,

which was a salaried position. The defendant informed plaintiff that her position, as well as other positions in the company—including those of salaried employees—had been eliminated. At that time, plaintiff was fifty-three years old.

The plaintiff grounds the factual basis for her suit in defendant's employee handbook. That document provides for a certain protocol to be followed in the event of "staff reduction": "In the event positions in the same Job classification are equal in value and each individual's performance of the assigned duties are [*sic*] relatively the same, the least senior employee within the department will be identified for staff reduction." Both parties refer to this protocol as "bumping" rights. Although the parties submitted contrary affidavits on the issue of whether these "bumping" rights applied to salaried employees such as plaintiff, the record discloses that at the hearing on the motion for summary judgment, plaintiff could not identify a salaried employee who had displaced a less senior salaried employee, and she maintained that she was the first salaried employee to be terminated under the policy who had requested to displace a less senior salaried employee. The plaintiff identifies two less senior employees with positions in the same job classification as call center manager—a younger woman and a man—as employees she should have been allowed to displace.

The handbook, however, includes numerous disclaimers. The opening letter from the president reads, in pertinent part: "Ross–Simons, in its discretion, may add, delete, or modify the policies and benefits described in this manual. When such changes occur, they will be communicated in writing to [the employee]. [The employee's] continuation in employment at Ross–Simons will indicate [his or her] acceptance of the changes." The receipt slip, which the employee is required to sign, includes that identical language. Furthermore, although the handbook generally outlines one's "privileges and obligations as an employee of Ross–Simons," the introduction to the handbook expressly limits the nature of those privileges and obligations: "The employment relationship between Ross–Simons and the employees is one of employment at will. Both the employee and Ross–Simons have the right to terminate their relationship for any reason." The receipt slip also states that employees hold their positions "at will" and that the handbook was intended as a "guideline."

Additionally, plaintiff alleged in her argument opposing summary judgment that prior to her termination she was "systematically excluded" from management meetings.

According to plaintiff's brief to this Court, she filed a charge of discrimination with the Rhode Island Commission for Human Rights (commission), and then waited 120 days before filing a complaint in Superior Court.[1] The plaintiff's second amended complaint delineated two counts

---

1. The plaintiff's brief appears to be, based on our review of the record, the first time that plaintiff avers that she made the requisite filing with the Rhode Island Commission of Human Rights (commission). *See* G.L. 1956 § 28–5–24.1(a). For example, plaintiff failed to document that filing in her original complaint, her second amended complaint, or in her memorandum of law opposing defendant's motion for summary judgment. Furthermore, plaintiff completely fails to identify whether the commission issued her a right to sue letter, and, if so, when that letter was issued. *See id.* The defendant, however, does not contend that plaintiff failed to adhere to the requirements of § 28–5–24.1; therefore, we will assume for purposes of this appeal that plaintiff did, in fact, adhere to the statutory requirements.

alleging: (1) gender and age discrimination in violation of the State Fair Employment Practices Act, G.L. 1956 chapter 5 of title 28;[2] and (2) a breach of an employment contract. On defendant's motion for summary judgment, the motion justice found: (1) no competent evidence existed that would allow a factfinder to infer that defendant's termination of plaintiff was motivated by age-based or gender-based discriminatory animus; and (2) that the employee handbook did not create a contract under Rhode Island law because the employer reserved the right to modify the handbook. The motion justice then entered summary judgment in favor of defendant, and plaintiff now appeals.

## II

### Analysis

When reviewing an order granting a motion for summary judgment, we apply the same standard as the motion justice and we conduct a *de novo* review. *Ritter v. Mantissa Investment Corp.*, 864 A.2d 601, 604 (R.I.2005). The judgment shall be affirmed "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Super. R. Civ. P. 56(c). A nonmoving party must demonstrate "by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Ritter*, 864 A.2d at 604 (quoting *Duffy v. Dwyer*, 847 A.2d 266, 269 (R.I.2004)). To clarify the legal significance of the employee handbook, we will address the legal issues plaintiff presented in reverse order.

### A

### Employment Contract

The plaintiff contends the motion justice misconstrued the law of this state on employee handbooks when he dismissed her breach of contract claim. "In this jurisdiction when the duration of a contract is uncertain, the contract is to be considered terminable at will." *Payne v. K-D Manufacturing Co.*, 520 A.2d 569, 573 (R.I.1987). The plaintiff seeks to circumvent the "at will" rule by arguing that the employee handbook granted to her the right to displace less senior employees in the event of a reduction in staff.

The principal authority that the motion justice cited for this issue was *Roy v. Woonsocket Institution for Savings*, 525 A.2d 915 (R.I.1987). In that case, we declined to decide whether we should adopt the doctrine that "handbooks and personnel policies may give rise to contract rights in certain circumstances." *Id.* at 918. *Roy* then proceeded, however, to provide reasons why, even if we adopted the doctrine, no employment contract arose in that case, one of which was:

"[T]he [employer's] handbook and manual specifically provided that the policies stated therein could be altered or revoked by the [employer] at any time and for any reason. Thus it cannot be said that [the employee] should have relied on any statements in the [employer's] handbook or manual. * * * '[I]f an employer notifies its employees that its policies are subject to unilateral change, the employees can have no legitimate expectation that any particular policy will remain in force.'" *Id.* (quoting *Dudkin v. Michigan Civil Service Com-*

---

**2.** The plaintiff's complaint also included an allegation of employment discrimination based on her Italian ancestry, but she did not pursue that allegation when opposing defendant's motion for summary judgment and she does not advance that argument on appeal.

*mission,* 127 Mich.App. 397, 339 N.W.2d 190, 195 (1983)).

Applying *Roy,* we have held that an employer was not required to make a certain severance payment to a terminated employee because the handbook in question reserved the employer's right to revise all its policies. *D'Oliveira v. Rare Hospitality International, Inc.,* 840 A.2d 538, 541 (R.I.2004). In doing so, we stated "employees cannot have a legitimate expectation that a particular policy will remain in effect when he or she has been notified that the policy is subject to unilateral change." *Id.; see also DelSignore v. Providence Journal Co.,* 691 A.2d 1050, 1052 (R.I.1997) (citing *Roy* as supporting the proposition that an employee's "implied contract theory" could not survive summary judgment because the employee "has not directed us to anything in the defendant's policies, practices, procedures, or employee memoranda that would give rise to a reasonable belief that he was anything other than an at-will employee").

The motion justice correctly applied the law to this case. The handbook's disclaimer contained both in the letter from the president and in the receipt slip clearly militates against any employee expectation that defendant can be bound by the policies expressed therein. Put differently, because defendant unilaterally could change its policy concerning staff reduction, plaintiff did not have a contractual right to displace less senior employees. Accordingly, plaintiff's breach of contract claim cannot survive summary judgment.

## B

### Employment Discrimination

The plaintiff next argues that the motion justice erroneously discounted her factual allegations in entering summary judgment in favor of defendant on her claims of age and gender discrimination. In doing so, plaintiff contends, the motion justice held her to a nearly insurmountable burden of proof. Since a claim of age discrimination and a claim of gender discrimination employ similar legal analyses, and because plaintiff marshals the same set of facts with respect to each claim, we will address both claims simultaneously.

■ The State Fair Employment Practices Act (FEPA), G.L. 1956 chapter 5 of title 28, prevents an employer from discharging an employee because of his or her "age" or "sex," § 28–5–7(1)(i)–(ii).[3] This Court has adopted the federal legal framework to provide structure to our state employment discrimination statutes. *Newport Shipyard, Inc. v. Rhode Island Commission for Human Rights,* 484 A.2d 893, 898 (R.I.1984). The parties seem to agree that plaintiff's claims are in the nature of disparate treatment, and, therefore, we will apply the now-familiar burden-shifting framework found in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See Newport Shipyard, Inc.,* 484 A.2d at 898. This burden shifting "allocates burdens of production and orders the presentation of evidence so as 'progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.'" *Center for Behavioral Health, Rhode Island, Inc. v. Barros,* 710 A.2d 680, 685 (R.I.1998) (quoting *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995)).

### 1

### Prima Facie Cases

■ A plaintiff must prove a prima facie case in the first step of the *McDon-*

---

3. The plaintiff's second amended complaint only refers to the State Fair Employment Practices Act, and does not refer to the Civil Rights Act of 1990, G.L. 1956 chapter 112 of title 42.

*nell Douglas* analysis. *Barros*, 710 A.2d at 685. The prima facie case in an age discrimination analysis based upon a termination [4] is:

"(1) she was at least forty years of age; (2) her job performance met the employer's legitimate expectations; (3) the employer subjected her to an adverse employment action (*e.g.*, an actual or constructive discharge); and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged." *Ramírez Rodríguez v. Boehringer Ingelheim Pharmacueticals, Inc.*, 425 F.3d 67, 78 n. 11 (1st Cir.2005); *cf. Casey v. Town of Portsmouth*, 861 A.2d 1032, 1037 (R.I.2004) (reciting the prima facie case in a failure to hire age discrimination analysis).

Similarly, the prima facie case in a gender discrimination analysis based upon a termination is:

"(1) she is a member of a protected class; (2) she was performing her job at a level that rules out the possibility that she was fired for inadequate job performance; (3) she suffered an adverse job action by her employer; and (4) her employer sought a replacement for her with roughly equivalent qualifications." *DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13, 21 (R.I.2005) (quoting *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 15 (1st Cir.1994)).

Concerning the first element of a prima facie case of gender discrimination, "every person is in a class protected against gender discrimination." *Id.* at 22 n. 7 (quoting *Williams v. Raytheon Co.*, 220 F.3d 16, 19

(1st Cir.2000)). Proving a prima facie case is not "especially onerous." *Barros*, 710 A.2d at 685. A prima facie case gives rise to "a [rebuttable] presumption that the employer unlawfully discriminated against the employee." *Id.*

Turning to this case, plaintiff, a woman who was fifty-three years old at the time she was terminated, is clearly a member of the classes protected from age and gender discrimination. The plaintiff alleged in her second amended complaint, and defendant admitted in its answer, that her job performance was at least "satisfactory." In eliminating her position, defendant unquestionably adversely affected plaintiff's employment. Finally, there is evidence to suggest that another manager at the call center, who had worked for defendant before plaintiff was terminated, assumed plaintiff's duties by working hours similar to the hours that plaintiff worked prior to her termination.[5] The prima facie cases of age and gender discrimination are supported by the facts of this case.

### 2

### Legitimate, Nondiscriminatory Reason

In the second step of the *McDonnell Douglas* burden-shifting framework, an employer must offer a legitimate, nondiscriminatory reason for terminating the employee. *Barros*, 710 A.2d at 685. The offer of a legitimate, nondiscriminatory reason is a burden of production rather than persuasion, *Casey*, 861 A.2d at 1037, and when produced, that reason eliminates the presumption of discrimination created by the prima facie case. *Wellborn v. Spurwink/Rhode Island*, 873

---

**4.** The elements of a prima facie case vary to some extent based on whether the underlying facts pertain to a termination, failure to promote, or failure to hire. *Casey v. Town of Portsmouth*, 861 A.2d 1032, 1036–37 (R.I. 2004).

**5.** The motion justice disagreed with defendant's contention that plaintiff failed to prove the fourth element of her prima facie case. In its briefs to this Court, defendant does not renew that argument on appeal.

A.2d 884, 889 (R.I.2005). The defendant articulated a legitimate, nondiscriminatory reason for terminating plaintiff: that defendant eliminated plaintiff's call center manager position in an effort to cut payroll. The defendant offered affidavits to support this contention, and, thus, it has met its burden of producing a legitimate, nondiscriminatory reason.

### 3
### Pretext and Discrimination

 The third and final step in this burden-shifting framework focuses on the ultimate question of "discrimination *vel non.*" *Casey,* 861 A.2d at 1037 (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 518, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). An employee need not offer " 'smoking gun' " evidence of discrimination. *Barros,* 710 A.2d at 685. Rather, an employee must prove that defendant's reason for termination was a pretext for discriminatory animus. *Casey,* 861 A.2d at 1038. More specifically, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* (quoting *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). The ultimate inference of discrimination is stronger when the reason for terminating an employee is "accompanied by a suspicion of mendacity." *Barros,* 710 A.2d at 685 (quoting *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742). The burden of proof in the third step of the *McDonnell Douglas* framework rests with the employee/plaintiff. *Wellborn,* 873 A.2d at 889.

The plaintiff argues that, on the ultimate issue of discrimination, a triable issue of fact arises from defendant's failure to adhere to its handbook and to offer plaintiff the option of displacing less senior employees—a younger woman and a man.[6] From this failure, plaintiff contends, a factfinder would be permitted to infer that by not allowing her to displace a younger woman, defendant committed age discrimination, and that by not allowing her to displace a man, defendant committed gender discrimination. The plaintiff relies heavily on our opinion in *Barros* to support her argument.

 In determining whether an employee has demonstrated pretext, we first analyze whether defendant's legitimate, nondiscriminatory reason bears "a suspicion of mendacity." *See Barros,* 710 A.2d at 685 (quoting *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742). Accordingly, we observed in *Barros* that "almost all the conduct that served as a basis for her termination took place prior to February 1991, when she announced her pregnancy." *Id.* at 686. Thus, the fact that her behavior became more objectionable to her employer after she became pregnant rendered the employer's reasons suspect. This "suspicion of mendacity," combined with the employer's failure to follow its policies, was sufficient to support a finding of unlawful gender discrimination. *See id.* at 685–86. Read fairly, *Barros* stands for the proposition that evidence suggesting a meaningful "suspicion of mendacity" will greatly bolster a plaintiff's case. It follows, therefore, that a lack of evidence on this point may be fatal to a claim of discrimination. *Cf. Ruiz v. Posadas de San Juan Associates,* 124 F.3d 243, 248 (1st Cir.1997).

**6.** The plaintiff also contends that she was "systematically excluded" from management meetings, but fails to develop how that fact advances her legal cause of action. Even in a light most favorable to her, this evidence has, at best, minimal relevance to the legal issues of pretext and discriminatory animus in this wrongful termination case.

The defendant's legitimate, nondiscriminatory reason for terminating plaintiff in this case is not analogous to *Barros*. At the same time plaintiff was terminated, defendant also discharged several other employees, including other salaried employees. This lends support to defendant's assertion that it sought to cut payroll throughout the company. Furthermore, plaintiff does not directly controvert defendant's assertion that it was, in fact, reducing its staff; she takes issue only with who was terminated. When analyzing an employer's attempt to reduce staff, other courts have noted the importance of allowing an employer to exercise its business judgment in terminating a member of a protected class:

"There is little doubt that an employer, consistent with its business judgment, may eliminate positions during the course of a downsizing without violating Title VII even though those positions are held by members of protected groups (pregnant women included). * * * This is merely a reflection of a central theme that permeates the relevant jurisprudence: insofar as Title VII is concerned, an employer can hire or fire one employee instead of another for any reason, fair or unfair, provided that the employer's choice is not driven by race, gender, pregnancy, or some other protected characteristic. * * * The flip side of the coin, however, is that an employer who selectively cleans house cannot hide behind convenient euphemisms such as 'downsizing' or 'streamlining.' Whether or not trimming the fat from a company's organizational chart is a prudent practice in a particular business environment, the employer's decision to eliminate specific positions must not be tainted by a discriminatory animus." *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 422 (1st Cir. 1996).

Therefore, plaintiff's failure to cast meaningful doubt on the proffered reason of staff reduction only militates in favor of entry of summary judgment.

We are mindful, however, that an employer's failure to follow certain termination policies can support an inference of discrimination. *Barros*, 710 A.2d at 686; *see also Casey*, 861 A.2d at 1039 (holding that an employee did not create a genuine issue of material fact concerning whether an employer deviated from its hiring policies). In *Barros*, however, the employer did not contend on appeal that the commission erred in concluding that the policies in question applied to the employee/plaintiff; in this case, by contrast, defendant vigorously maintains that the staff reduction policy applied only to non-salaried employees, rather than such salaried employees as plaintiff. The plaintiff does offer an affidavit of another former employee to support her assertion that the policy applied to salaried employees. When pressed by the motion justice, however, plaintiff could not identify a single instance in which a salaried employee was offered an opportunity to displace a less senior salaried employee.

Ultimately, we must answer the challenging question of whether the pleadings and affidavits in this case, which suggest that an employer may have failed to adhere to its handbook, are sufficient to survive summary judgment in an employment discrimination case in which the factfinder will be asked to infer an employer's true intent and motive for terminating an employee. Even when we read the pleadings and affidavits in a light most favorable to her, the plaintiff fails to cast any meaningful doubt on the defendant's reason for terminating the plaintiff, staff reduction. Accordingly, a reasonable juror could not infer age and/or gender-based discriminatory animus from the combination of the plaintiff's prima facie case and the fact

that the defendant *may* have failed to adhere to its staff reduction policy. We hold that the motion justice properly entered summary judgment in favor of the defendant on both employment discrimination claims.

### Conclusion

For the foregoing reasons, we affirm the motion justice's grant of summary judgment in favor of the defendant. The record shall be remanded to the Superior Court.