Justice GOLDBERG,
concurring in part and dissenting in part.
This case highlights the tension between the summary judgment standard and the *1178 substantive framework applied to employment discrimination claims. Although this Court has adopted the three-step McDonnell-Douglas framework in these cases, we did not dispense with the Rules of Civil Procedure. Rule 56 of the Superior Court Rules of Civil Procedure requires that a Superior Court justice deny summary judgment when there exists a genuine issue of material fact. Because my de novo review of the record results in a substantially different view of the evidence and because I therefore conclude that genuine issues of material fact concerning Hurd’s motivation for terminating Bucci are manifest, I respectfully dissent.[1]
I
Summary Judgment in Employment Discrimination Cases
An employment discrimination case is a unique cause of action. Unlike a straightforward tort or breach of contract case— where, on summary judgment, a trial justice can look at one set of elements to a cause of action and determine whether or not there is a genuine issue of material fact relating to one or more of those elements — the McDonnell-Douglas framework is more akin to a moving target with three steps and shifting burdens of proof and production. Thus, I begin my analysis by describing the proper legal context for consideration of a motion for summary judgment in an employment discrimination case.
A
The Summary Judgment Standard
The starting point for any legal analysis by this Court is the standard of review. “[Tjhis Court reviews a grant of summary judgment de novo.” Sullo v. Greenberg, 68 A.3d 404, 406 (R.I.2013) (quoting Sacco v. Cranston School Department 53 A.3d 147, 149-50 (R.I.2012)). Thus, we examine the case “from the vantage point of the trial justice who passed on the motion for summary judgment * * Id. Critically important here, “[w]e view the evidence in the light most favorable to the nonmoving party * * *.” Id. In performing this review, we draw all reasonable inferences in favor of the nonmoving party. See Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 424-25 (R.I.2013) (noting that “the facts and all reasonable inferences therefrom” are viewed “in the light most favorable to the nonmoving party” (quoting Derderian v. Essex Insurance Co., 44 A.3d 122, 126-27 (R.I.2012))).
“Ultimately, the ‘purpose of the summary judgment procedure is issue finding, not issue determination.’ ” DeMaio v. Ciccone, 59 A.3d 125, 130 (R.I.2013) (quoting Estate of Giuliano v. Giuliano, 949 A.2d 386, 391 (R.I.2008)). After examining the evidence in the light most favorable to the nonmoving party and drawing reasonable inferences, summary judgment is appropriate only when “there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment *1179 as [a] matter of law.” Sola v. Leighton, 45 A.3d 502, 506 (R.I.2012) (quoting Plunkett v. State, 869 A.2d 1185, 1187 (R.I.2005) (emphasis added)). If the evidence submitted permits an inference that creates a genuine issue of material fact, the motion must be denied. See DeMaio, 59 A.3d at 132 (holding that a Superior Court justice may not choose between conflicting inferences at summary judgment stage). Finally, “[sjummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously.” Cruz v. DaimlerChrysler Motors Corp., 66 A.3d 446, 451 (R.I.2013) (quoting DeMaio, 59 A.3d at 129).
B
Employment Discrimination and the McDonnell-Douglas Framework
The plaintiff here asserts a statutory right; thus, the analysis should begin with the statute that grants her the right that she seeks to enforce. The Rhode Island General Laws provide that it is unlawful for any employer “to discharge an employee * * * because of his or her * * * age * * *.” G.L.1956 § 28 — 5—7(l)(i), (ii). In enacting the Fair Employment Practices Act (FEPA), the General Assembly made the following legislative findings:
“The practice or policy of discrimination against individuals because of their race or color, religion, sex, sexual orientation, gender identity or expression, disability, age, or country of ancestral origin is a matter of state concern. Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the state, and undermines the foundations of a free democratic state. The denial of equal employment opportunities because of such discrimination and the consequent failure to utilize the productive capacities of individuals to their fullest extent deprive large segments of the population of the state of earnings necessary to maintain decent standards of living, necessitates their resort to public relief, and intensifies group conflicts, thereby resulting in grave injury to the public safety, health, and welfare.” Section 28-5-2.
Further, the Legislature declared that it is “the public policy of this state to foster the employment of all individuals in this state in accordance with their fullest capacities, regardless of their * * * age * * * and to safeguard their right to obtain and hold employment without such discrimination.” Section 28-5-3.
To analyze employment discrimination cases under FEPA, this Court has looked to analogous federal anti-discrimination law. See Neri v. Ross-Simons, Inc., 897 A.2d 42, 48 (R.I.2006) (“This Court has adopted the federal legal framework to provide structure to our state employment discrimination statutes.”). Thus, “the parties must engage in the three-part burden-shifting paradigm set forth by the United States Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).” McGarry v. Pielech, 47 A.3d 271, 280 (R.I.2012).
Under the first McDonnellr-Douglas prong, the plaintiff must set forth a prima facie case of discrimination. McGarry, 47 A.3d at 280. Thus, in an age discrimination case based upon termination, the plaintiff must show that
“(1) she was at least forty years of age; (2) her job performance met the employer’s legitimate expectations; (3) the employer subjected her to an adverse employment action (e.g., an actual or constructive discharge); and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged.” *1180 Neri, 897 A.2d at 49 (quoting Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 78 n. 11 (1st Cir.2005)).
“The burden placed on the complainant at this stage is not especially onerous.” Center for Behavioral Health, Rhode Island, Inc. v. Barros, 710 A.2d 680, 685 (R.I.1998). “Once the plaintiff establishes these four elements, a presumption arises that the defendant committed unlawful discrimination.” McGarry, 47 A.3d at 280.
Once the plaintiff has met his or her initial burden, the burden shifts to the defendant to “offer a legitimate, nondiscriminatory reason for terminating the employee.” Neri 897 A.2d at 49. The burden on the defendant employer is one “of production rather than persuasion.” Id. If the defendant proffers such a nondiscriminatory explanation, the presumption of discrimination disappears. McGarry, 47 A.3d at 280.
The third prong in the McDonnell-Douglas framework “constitutes the crux of proving a discrimination case.” McGarry, 47 A.3d at 281. This prong “focuses on the ultimate question of ‘discrimination vel non.’ ” Neri 897 A.2d at 50 (quoting Casey v. Town of Portsmouth, 861 A.2d 1032, 1037 (R.I.2004)). Generally, at this stage, the plaintiff must show that the employer’s proffered reasons for its action were pre-textual and that discrimination was the real reason for the termination. McGarry, 47 A.3d at 281. Because the standard for this prong on summary judgment is at the heart of this case, it is discussed in more detail below.
C
The Problem of Summary Judgment in Employment Discrimination Cases
As with most employment discrimination cases, this case glides through the first and second prongs of the McDonnell-Douglas framework with ease. Accordingly, I agree with the majority’s analysis under those prongs. However, on consideration of the third prong, our views diverge.
The third prong of the McDonnell-Douglas framework is intrinsically malleable. This Court’s pronouncements in previous cases provide fertile ground for both employers and employees. A defendant-employer can point to the fact that “a plaintiff must do more than simply cast doubt upon the employer’s justification [for firing the plaintiff].” McGarry, 47 A.3d at 281 (quoting Resare v. Raytheon Co., 981 F.2d 32, 42 (1st Cir.1992)). Furthermore, “[t]he plaintiff must demonstrate not only that the defendant’s purported reason for not hiring the plaintiff was false, but also that discrimination was the real reason.” Id. Nevertheless, a plaintiff-employee knows that “[p]roof of discrimination does not require evidence of the ‘smoking-gun’ variety,” and that the factfinder may “infer the ultimate fact of intentional discrimination.” Casey, 861 A.2d at 1038 (quoting Barros, 710 A.2d at 685). The thin line between sufficient and insufficient evidence really comes to light when juxtaposing the statements that “proof that a reason for not hiring plaintiff was pretextual is insufficient, on its own, to support a finding of discrimination,” McGarry, 47 A.3d at 281 (quoting Casey, 861 A.2d at 1038), yet, “a plaintiffs prima facie case, combined with sufficient evidence to find that the employer’s asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.” Neri, 897 A.2d at 50 (quoting Casey, 861 A.2d at 1038) (emphasis added).
Applying these precepts is particularly problematic at the summary judgment stage. See Hon. Bernice B. Donald and J. Eric Pardue, Bringing Back Reasonable *1181 Inferences: A Short, Simple Suggestion for Addressing Some Problems at the Intersection of Employment Discrimination and Summary Judgment, 57 N.Y.L. Sch. L.Rev. 749, 755 (2013) (“The application of the McDonnell-Douglas framework is complicated by the procedural rules of summary judgment.”). Although typically framed as a question of what the plaintiff must “prove,” a plaintiff is not required to “prove” anything on a motion for summary judgment in the same way that he or she would at trial. On summary judgment, the plaintiff must only put forth enough evidence to show that a dispute of material fact exists in the case.
Recent legal literature discusses the mountain that a plaintiff-employee must climb just to get to a jury trial. See Kerri Lynn Stone, Shortcuts in Employment Discrimination Law, 56 St. Louis U. L.J. Ill, 112 (2011) (“Research confirms everyday observations of how much more difficult it is for employment discrimination plaintiffs than for other plaintiffs to survive pre-trial motions to dismiss their cases and to win at trial or on appeal.”). “The Federal Judicial Center has noted that ‘[sjummary judgment motions by defendants are more common in [employment discrimination] cases, are more likely to be granted, and more likely to terminate the litigation.’” Donald and Pardue, 57 N.Y.L. Sch. L.Rev. at 752 (quoting Memorandum from Joe Cecil & George Cort, Federal Judicial Center, to Judge Michael Baylson, at 3 (Aug. 13, 2008)). “Recent data suggests that * * * 73% of summary judgment motions in employment discrimination cases are granted— the highest of any type of federal civil case.” Elizabeth M. Schneider, The Changing Shape of Federal Civil Pretrial Practice: The Disparate Impact on Civil Rights and Employment Discrimination Cases, 158 U. Pa. L.Rev. 517, 549 (2010). Although these studies concern federal courts — and to my knowledge no such study of Rhode Island cases exists — my experience with employment discrimination cases comports with these conclusions.
Here, the majority parses each piece of evidence proffered by plaintiff and — while purporting to view the evidence in the light most favorable to plaintiff — proceeds to explain (and indeed decide) why each of plaintiffs arguments fail to show pretext or discrimination. It is my opinion that this is the wrong approach; it results in a piece-by-piece analysis of the evidence rather than placing the evidence in the context of the whole claim. See Schneider, 158 U. Pa. L.Rev. at 544 (“Judicial opinions on summary judgment are often so mechanistic that they become ‘sliced and diced,’ a process that * * * ‘sees less in the parts by subjecting the nonmovant’s “evidence” to piece-by-piece analysis’ instead of analyzing it contextually.” (quoting Stephen B. Burbank, Vanishing Trials and Summary Judgment in Federal Civil Cases: Drifting Toward Bethlehem or Gomorrah?, 1 J. Empirical Legal Stud. 591, 624, 625 (2004))).
In my opinion, the correct approach requires a court to look at the case as a whole and consider the ultimate issue based on the totality of the evidence. Although the details are malleable, it is settled that the third prong “focuses on the ultimate question of ‘discrimination vel non.”’ Neri, 897 A.2d at 50 (quoting Casey, 861 A.2d at 1037); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (“The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.”). A Second Circuit judge with extensive employment discrimination experience frames the ultimate issue on summary judgment as “whether the plain *1182 tiff presented evidence from which a reasonable jury could find that, more likely than not, the employer’s decision was motivated at least in part by discrimination.” Hon. Denny Chin, Summary Judgment in Employment Discrimination Cases: A Judge’s Perspective, 57 N.Y.L. Sch. L.Rev. 671, 679 (2013) (emphases added). Importantly, however, Judge Chin notes that “[t]he evidence has to be considered as a whole — seemingly innocuous or innocent pieces of evidence may take on a different meaning when placed in context.” Id. at 680.
The preferred approach of placing the evidence in context and considering the ultimate issue is a route that is grounded by Supreme Court precedent. Although undertaking review of a Rule 50 motion in an employment discrimination case, the Supreme Court noted that “[i]n the analogous context of summary judgment under Rule 56, we have stated that the court must review the record ‘taken as a whole.’ ” Reeves, 530 U.S. at 150, 120 S.Ct. 2097 (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Furthermore, in reviewing the evidence, “the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.” Id. “Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.” Id. at 150, 120 S.Ct. 2097 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
Significantly, when the case is viewed in the proper context, a factfinder’s disbelief of an employer’s proffered nondiscriminatory reasons may carry significant weight. The Supreme Court noted that, in a prior decision, the Court “reasoned that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer’s explanation.” Reeves, 530 U.S. at 147, 120 S.Ct. 2097 (citing St. Mary’s Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). A factfinder’s disbelief of reasons proffered by the defendant-employer, particularly when “accompanied by a suspicion of mendacity,” may, “with the elements of the prima facie case,” be sufficient to show discrimination. Id. (quoting Hicks, 509 U.S. at 511, 113 S.Ct. 2742). A party’s dishonesty may be considered as “affirmative evidence of guilt.” Id. (quoting Wright v. West, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992)). Potentially false (or perjurious) evidence cannot be overlooked or, worse, ignored on summary judgment. With these principles in mind, it follows that a plaintiff is not required to disprove each and every one of a defendant’s proffered nondiscriminatory reasons when he or she can cast substantial doubt on all of them because there is evidence suggesting mendacity.[2] Ultimately, the question of whether to draw the necessary inferences to establish the claim is for a jury: “Whether the defendant was in fact moti *1183 vated by discrimination is of course for the finder of fact to decide * * *.” Reeves, 530 U.S. at 154, 120 S.Ct. 2097 (Ginsberg, J., concurring).[3]
Focusing on the ultimate issue and viewing the evidence as a whole comports with the statute that Bucci seeks to enforce, a factor absent from the majority’s analysis. The General Assembly has declared that the policy of Rhode Island is “to foster the employment of all individuals in this state in accordance with their fullest capacities, regardless of their * * * age * * *, and to safeguard their right to obtain and hold employment without such discrimination.” Section 28-5-3. Accordingly, an employee need only “demonstrate[ ] that * * * age * * * was a motivating factor for any employment practice, even though the practice was also motivated by other factors.” Section 28-5-7.3 (emphasis added). Thus, even if an employer can prove that an incident of poor work performance by an employee played a part in a termination, if the plaintiff-employee can show that discrimination also was a motivating factor, then a statutory claim exists. See id. Simply querying whether every one of an employer’s reasons has been specifically rebutted by the plaintiffs evidence contravenes the statute and is plainly wrong.[4]
My approach is not a departure from our case law. See Donald and Pardue, 57 N.Y.L. Sch. L.Rev. at 762-63 (advocating for liberal construction of drawing all reasonable inferences in favor of the nonmov-ing party and noting that it is, arguably, already the standard). It merely places the substantive framework of an employment discrimination case — as adopted by this Court — in the proper context of a summary judgment motion. Therefore, on the third prong of the McDonnell-Douglas framework, the burden on the plaintiff at the summary judgment stage is merely to put forth evidence from which a jury could reasonably conclude that, when viewed as a whole, the employer’s decision was motivated at least in part by discrimination.[5] It is in this context, that I proceed to analyze the evidence presented in this case.
*1184 II
Application of the Standard and the Framework to the Facts
The majority, quite appropriately, begins its discussion of the third prong of the McDonnell-Douglas framework by addressing Bucci’s argument that there was evidence of mendacity, based primarily on the glaringly inconsistent testimony of Martin and Mandeville. Martin testified by affidavit that, in conjunction with the warning notice given to Bucci for the forgery incident with the Connecticut Department of Motor Vehicles (the Connecticut incident), “I reviewed Ms. Bucci’s employment file for the first time and found there were many previous complaints against her, dating as far back as August 2001.” Martin then detailed what he learned from the file in three paragraphs. Martin then attested that “[biased on my observations and assessment of Ms. Bucci’s work performance and upon my review of her personnel file, Hurd discharged her for the third and final time in November 2006.”[6] Mandeville, however, testified in her deposition that no one looked at Bucci’s file until after she was terminated.[7] Only one of these witnesses was truthful, and it is not for this Court, or the trial justice on summary judgment, to decide which one.
The majority errs in its conclusion that this striking dichotomy, viewed in the light most favorable to plaintiff and drawing all reasonable inferences from this evidence, does not permit a factfinder to infer that there was “a suspicion of mendacity” regarding Hurd’s motivation for firing Bucci. See Barros, 710 A.2d at 685 (noting that the elements of a sufficient prima facie case can “combine with the factfinder’s belief that the basis for dismissing the employee was pretextual, particularly if ‘accompanied by a suspicion of mendacity,’ [thus] the factfinder is permitted ‘to infer the ultimate fact of intentional discrimination’ ” (quoting Hicks, 509 U.S. at 511, 113 S.Ct. 2742 and citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1092 (1st Cir.1995))). The majority declares — without citation — that “a mere inconsistency, without more, does not give rise to a suspicion of mendacity.” The majority then states that it would be “reasonable to conclude that Martin never reviewed plaintiffs personnel file before he discharged her,” but that “it would be inappropriate for this Court to conclude that Martin lied.”[8] I agree with the majority that it would be inappropriate for this Court to conclude that Martin lied — that is a question for a factfinder, ie., a jury. However, a reasonable jury could conclude that Martin’s *1185 proffered reliance on a personnel file that he never saw was a post-hoc justification and, therefore, mendacious (and arguably perjurious), which infects the credibility of the entire affidavit. Such issues of credibility are not to be resolved on summary judgment. Sec DeMaio, 59 A.3d at 130 (“The motion justice ‘must refrain from weighing the evidence or passing upon issues of credibility.’ ” (quoting Doe v. Geli-neau, 732 A.2d 43, 48 (R.I.1999))). Because my de novo review requires me to draw an inference in favor of plaintiff, as I believe is required under our law on summary judgment, I continue my analysis with the understanding that a suspicion of mendacity pervades Hurd’s purported reasons for terminating Bucci.
Although standing alone, the fact that Martin may have lied about examining Bucci’s personnel file may not be sufficient to give rise to an issue of fact as to a motivating factor for age discrimination, I need not reach such an issue in this case because there is a plethora of evidence piled on top of the allegedly mendacious affidavit.[9] First, the very content of the file includes complaints against Bucci from 2001 and 2002. However, it is undisputed that Bucci was rehired after those complaints. The fact that Hurd now employs some of the same reasons to fire Bucci that it overlooked when it rehired her suggests that the proffered reasons for firing her in this case were pretextual.
Additionally, Hurd provided numerous inconsistent reasons for terminating Bucci. As noted above, Martin stated that Bucei’s termination was “[bjased on [his] observations and assessment of Ms. Bucci’s work performance and upon [his] review of her personnel file,” which was locked away. Mandeville, however, wrote on the form submitted to the Department of Labor and Training that the “reason for separation” was that Hurd was “rearranging people’s jobs.” Mandeville testified that she had never been untruthful on the forms submitted to the Department of Labor. This additional inconsistency, especially when combined with a mendacious affidavit, can be evidence of pretext.
The majority may be correct to say that Hurd could have fired Bucci because of the Connecticut incident. But Hurd chose not to do so. Instead, Hurd issued a written warning in accordance with its personnel policy — the first and only such written warning issued to Bucci during her third stint of employment at Hurd. Earlier that year, Bucci had begun to experience knee problems, resulting in her wearing a brace. The day after the Connecticut incident occurred, Bucci went on a short medical leave for cataract surgery. Knee and cataract problems are associated with age. *1186 Bucci received no additional written warnings after the warning for the Connecticut incident, yet Hurd fired her approximately two months later. This written warning and the two month interval until discharge also undercuts defendants’ response to interrogatories which alleged that the Connecticut incident was “the final straw.”
Furthermore, Bucci states in her affidavit that she “recalled] asking Martin if the reason I was being terminated from Defendants was because of the September warning [for the Connecticut incident]. He said no.” Viewing this evidence in the light most favorable to plaintiff, a reasonable jury could infer that Hurd’s proffer of the Connecticut incident as the reason for her termination was pretextual and that a real reason was Bucci’s age. Alternatively, even if the forgery incident was one of the reasons for firing Bucci, she need only “demonstrate[ ] that * * * age * * * was a motivating factor for any employment practice, even though the practice was also motivated by other factors.” Section 28-5-7.3.
The majority also dismisses the conflicting evidence regarding Bucci’s alleged unwillingness to take on additional tasks. Martin’s affidavit contends that Bucci was “generally unwilling” to perform additional duties. The plaintiff, however, actually testified that she agreed to at least some of the tasks,[10] but she was unable to do so on her computer because that computer could not be used for anything other than online vehicle registrations. The plaintiff submitted additional evidence from the Department of Motor Vehicles (DMV) that corroborated the DMVs requirement of a dedicated computer for registrations. Bucci went on to say that she would need a second computer to perform the additional tasks, and that “[t]hey were going to be in the process of doing it” before she was fired. Nevertheless, the majority concludes that Bucci’s deposition testimony did not specifically rebut Martin’s allegations that Bucci was unwilling to receive training on the payroll system and generate activity reports on pending transactions. In so doing, the majority fails to see what is really at stake in the greater context of the case: an employer suggesting that an employee refused additional responsibilities, and an employee contending that she was willing but her employer did not provide her with the necessary resources — in this case, an additional computer. In my view of the evidence in the light most favorable to plaintiff, whether Bucci was “generally unwilling” to take on additional responsibilities or instead was actually unable to perform the duties because of her computer system is a question of fact for a jury.
Finally, Hurd did not follow its own termination procedure. In my opinion, the majority’s observation that plaintiff is an at-will employee — terminable with or without cause at any time — is a red herring on this issue. A plaintiffs employment status is irrelevant because our law prohibits discrimination no matter the employee’s status. See § 28-5-7. As most employees are at-will, the consideration of an employee’s at-will status as a factor weighing against discrimination would render the statute meaningless. Although progressive discipline is discretionary in Hurd’s employee handbook, here, plaintiff presented evidence that Hurd gives warnings because “[u]sually three warnings [and] you’re terminated.” The policy itself states that its purpose is to “administer[ ] equitable and consistent discipline for unsatisfactory conduct in the workplace.” This evidence suggests that Hurd typically *1187 follows its progressive discipline policy, and therefore, in this case, defendant departed from the company norm. Thus, the violation of a permissive policy may contribute to the mosaic of evidence supporting discrimination, particularly when there is evidence that the policy is usually followed and actually was followed for two months. It is for a jury — not this Court and not the Superior Court — to decide the weight of this evidence.
Having assessed the evidence discussed above — the suspicion of mendacity resulting from Martin’s affidavit, the defendant’s inconsistent reasons for termination and evidence of their falsity, and a failure to follow its own employment procedures— and viewing this evidence in the light most favorable to the plaintiff and in the context of the entire claim, a reasonable jury could find that age was a motivating factor in Hurd’s decision to fire Bucci. For this reason, it is my opinion that summary judgment should have been denied in this case.
Ill
Conclusion
Our procedural rules seek to balance the scales of justice: summary judgment provides a party with an opportunity to terminate litigation before a costly trial, but only if no material facts are genuinely in dispute. The summary judgment standard takes into account the potential cost of a trial to a party facing weak claims, the opposing party’s right to a jury’s determination of witness credibility, facts, and inferences, and the judiciary’s interest in judicial economy. It is my opinion that the majority’s approach in this case wrongly tips the scales in favor of employers. An employment discrimination plaintiffs case is strongest when the evidence is viewed as a whole and not parsed into pieces. This results in a tinted view of the evidence that does not comport with the summary judgment standard. When considering the context of the whole claim, the facts and inferences discussed above permit a factfinder to conclude that age was a motivating factor in Hurd’s decision to fire Bucci. I make no conclusions about the factual strength of Bucci’s claim; it is not for this Court — or the Superior Court — to decide, it is a question for a jury. Unfortunately, the majority deprives Bucci of her right to have a jury answer it. Consequently, I dissent. .

. I concur with the majority’s conclusion that plaintiff’s disability discrimination claim was waived. Although many of the facts supporting an age discrimination claim would also support a disability discrimination claim, plaintiff's discussion of her medical conditions in her brief states only that "[djuring CFO Martin’s tenure, Plaintiff began having problems associated with old age.” No such discussion of a disability occurs in the brief. The only mention of any disability whatsoever is Bucci’s averment that she filed a disability claim with the Commission for Human Rights and the allegations in the complaint. With those meager statements, particularly given that there is a question of whether there is any evidence that defendant regarded her as having a disability, the issue was not sufficiently developed for our review.

. As the Third Circuit stated when addressing a Title VII claim:
"We do not hold that, to avoid summary judgment, the plaintiff must cast doubt on each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder’s rejection of some of the defendant’s proffered reasons may impede the employer's credibility seriously enough so that a fact-finder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.” Fuentes v. Perskie, 32 F.3d 759, 764-65 n. 7 (3d Cir.1994).

. It is preferable for juries to decide these issues:
"In civil rights or employment discrimination cases, however, where subtle issues of credibility, inferences, and close legal questions may be involved, where issues concerning the ‘genuineness’ or 'materiality' of facts are frequently intertwined with law, a single district judge may be a less preferable decisionmaker than a jury. Juries are likely to be far more diverse and to bring a broader range of perspectives to bear on the problem.” Elizabeth M. Schneider, The Changing Shape of Federal Civil Pretrial Practice: The Disparate Impact on Civil Rights and Employment Discrimination Cases, 158 U. Pa. L.Rev. 517, 542-43 (2010).

. I must pause here to note that this Court very recently discussed "the General Assembly's veiy explicit determination” regarding the necessity of anti-discrimination measures:
"The General Assembly has sounded neither an uncertain nor a muted trumpet in this domain; it has clearly manifested an intent of the highest order to extirpate discrimination in employment in view of its deleterious effect on individuals and on society more generally. * * * The General Assembly specifically and solemnly declared that the FEPA was designed to address ‘matter[s] of state concern * * * [which] foment[ ] domestic strife and unrest * * * and undermine the foundations of a free democratic state.’ ” Weeks v. 735 Putnam Pike Operations, LLC, 85 A.3d 1147, 1158-59, 2014 WL 800466 (R.I.2014) (quoting G.L.1956 § 28-5-2).

.This formulation does not ignore pretext; viewing the evidence as a whole also includes consideration of the defendant's proffered nondiscriminatory reasons for its action.

. Additionally, in its response to interrogatories, defendant stated that "[w]hen Hurd began to consider the possibility of firing Plaintiff, Mr. Martin looked into Plaintiff’s file and noticed the previous complaints against Plaintiff.”

. The following colloquy occurred during Mandeville’s deposition:
"Q. * * * [I]n order to get the [employment] folder, they would have to talk to you right?
"A. Correct.
"Q. Who has sought to look at [Bucci’s] folder?
“A. We didn't — they didn’t ask to see the folder until after she was dismissed.
"Q: Who did?
"A. Wendy [Bowen] and Al [Martin].
"Q. Had anyone ever looked at [the folder] before [Bucci] left the third time?
"A. Before, no.
"Q. Did you keep them locked?
“A. Yes.
"Q. Does anyone else have the key?
"A. No.”

.I am not willing to overlook this evidence as merely "inconsistent” testimony. Nor do I believe that a justice of the Superior Court, when confronted with testimony that may be untruthful, should do so either.

. The majority’s orientation toward the evidence at its analogous point of discussion highlights the difference in our analytical viewpoints. After the majority's discussion of mendacity, it continues that "the 2001-02 complaints about Bucci’s performance were not the solitary evidence defendant presented to support the termination.” In my view, this is the wrong orientation; it slices and dices plaintiff's evidence, which we are supposed to view in the light most favorable to plaintiff and in the context of the entire claim. Additionally, it contravenes the statute, which only requires plaintiff to demonstrate that age "was a motivating factor for any employment practice, even though the practice was also motivated by other factors.” Section 28-5-7.3. On summary judgment, the analysis should continue to search for whether plaintiff has raised an issue of fact as to discrimination, not whether one of defendant's listed reasons can survive a piecemeal analysis. See Sullo v. Greenberg, 68 A.3d 404, 407 (R.I.2013) ("[Tjhe burden is on the nonmoving party to produce competent evidence that 'prove[s] the existence of a disputed issue of material fact[.]’ " (quoting Mutual Development Corp. v. Ward Fisher & Co., 47 A.3d 319, 323 (R.I.2012))).

. As quoted in footnote 8 of the majority opinion, regarding billing for wholesale vehicles, plaintiff stated, "I said to [Martin] fine. I’ve done that before, so I can do it again.”