**Richard J. CASEY**

v.

**TOWN OF PORTSMOUTH et al.**

No. 2004–124–Appeal.

Supreme Court of Rhode Island.

Dec. 13, 2004.

Michael F. Drywa, for Plaintiff.

Michael DeSisto, Providence, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The plaintiff, Richard J. Casey (plaintiff), appeals the dismissal of his claim of age discrimination on a motion for summary judgment brought by the defendants, Town of Portsmouth (town) and Donna A. Barker (Barker), individually and in her capacity as town personnel director (collectively defendants). The plaintiff's complaint alleged that the defendants discriminated against him based on his age by twice failing to hire him for the position of utilityman in 1998. On appeal, the plaintiff argues that a genuine issue of material fact exists about whether the legitimate, non-discriminatory reason proffered by the defendants for not hiring him is a pretext for age-based animus.

This case came before the Supreme Court for oral argument on November 1, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of

the opinion that cause has not been shown, and proceed to decide the appeal at this time. For the reasons indicated herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

In 1998, plaintiff applied twice for a utilityman position with the town's public works department. A local help-wanted advertisement read:

"Qualifications: Age 18 or over. Must have prior experience in highway related work, including the operation of medium to heavy equipment. Must possess a valid Rhode Island Commercial Driver's License. Must pass a written and practical application test."

The town's personnel rules and regulations further provided that, all things being equal, preference in hiring would be given to residents of the town. As a town resident who met all the listed qualifications, plaintiff applied for the position.

In February 1998, plaintiff took the written exam. He tied for first on that exam. Based on these test results, the town council interviewed the top five applicants, including plaintiff. On March 3, 1998, the town informed plaintiff that it had hired another applicant, Brian Woodhead (Woodhead), who had a slightly lower score on the written exam. The plaintiff was fifty-one years old at the time; Woodhead was twenty-eight.

In November 1998, another utilityman position became available. Since plaintiff remained on the eligibility list pursuant to the town's personnel rules and regulations, the town invited him to interview again before the town council without requiring him to resubmit an application. Of the applicants interviewed on December 8, 1998, plaintiff again scored the highest on the written exam. The town later informed plaintiff that it had hired another applicant. The letter said that the town council offered the position to two other applicants, both of whom declined or otherwise withdrew; then the town council interviewed three additional applicants, one of whom, a man named Robert Loughlin (Loughlin), was hired. Loughlin's previous work experience as a supervisor of a tent company included operating of a fork lift and snowplow and he did have a commercial driver's license, but he scored significantly lower on the exam and was not a resident of the town. The plaintiff was fifty-two years old by this time; Loughlin was thirty-eight.

The plaintiff brought suit against defendants,[1] alleging that the town's decision to hire younger applicants amounted to age discrimination under the Rhode Island Fair Employment Practices Act, G.L. 1956 chapter 5 of title 28 (RIFEPA), and the Rhode Island Civil Rights Act, G.L. 1956 chapter 112 of title 42 (RICRA). The motion justice granted defendants' motion for summary judgment on the grounds that the evidence before the court on summary judgment did not create a genuine issue of material fact about whether defendants' failure to hire plaintiff was the result of age-based animus. The plaintiff appeals, alleging that the motion justice erred in doing so.

---

1. The plaintiff argues that the motion justice erred in not ruling whether he could proceed against Barker in an individual capacity. In holding that plaintiff has not produced evidence that the defendants discriminated against him, we expressly hold that the evidence does not support a conclusion that Barker, in an individual capacity, discriminated against plaintiff based on his age. Thus, the motion justice did not err in dismissing plaintiff's case with respect to all defendants.

## II

## Analysis

The question presented on appeal is whether plaintiff's evidence would have created a genuine issue of material fact about whether defendants' legitimate, non-discriminatory reason for not hiring him was pretext and, thus, defendants discriminated against plaintiff based on his age. We hold plaintiff has failed to meet his burden.

■ In reviewing a motion for summary judgment, this Court examines "the matter *de novo*" and applies "the same standards as those used by the trial court." *Duffy v. Dwyer*, 847 A.2d 266, 268 (R.I. 2004) (quoting *JH v. RB*, 796 A.2d 447, 448 (R.I.2002)). "We will uphold a motion justice's grant of summary judgment '[o]nly when a review of the evidence in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law * * *.'" *Id.* at 268–69 (quoting *JH*, 796 A.2d at 449). The nonmoving party must prove "by competent evidence the existence of a disputed issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Id.* (quoting *Taylor v. Mass. Flora Realty, Inc.*, 840 A.2d 1126, 1129 (R.I.2004)).

The RIFEPA states the refusal "to hire any applicant for employment" because of his or her age is "an unlawful employment practice." Section 28–5–7(1)(i). The RI-CRA similarly provides: "All persons within the state, regardless of * * * age" have "the full and equal benefit of all laws * * *." Section 42–112–1(a). Both statutes define "age" as "anyone who is at least forty (40) years of age." Sections 28–5–6(1), 42–112–1(d).

To provide understanding to the above statutes, we look to the federal interpreta-

tions of Title VII of the Civil Rights Act of 1964. *Newport Shipyard, Inc. v. Rhode Island Commission for Human Rights*, 484 A.2d 893, 898 (R.I.1984). Two distinct types of federal employment discrimination cases exist: disparate treatment and disparate impact. *Id.* The parties agree that plaintiff proceeds under a theory of disparate treatment, in which plaintiff may seek to prove discrimination through direct or indirect evidence in accordance with the methodology set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *Newport Shipyard, Inc.*, 484 A.2d at 898 (expressly adopting the Title VII burden-shifting framework).

■ Under the *McDonnell Douglas* three-step analysis, the burdens shift back and forth between plaintiff and defendant "to sharpen the inquiry into the elusive factual question of intentional discrimination." *Center for Behavioral Health, Rhode Island, Inc. v. Barros*, 710 A.2d 680, 685 (R.I.1998) (quoting *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995)). The first step requires a plaintiff to establish a prima facie case of age discrimination. *Newport Shipyard, Inc.*, 484 A.2d at 898 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817). The second step requires a defendant to rebut that prima facie case by offering a legitimate, nondiscriminatory reason for failing to hire the plaintiff. *Barros*, 710 A.2d at 685 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817). Although the heart of this appeal lies in the third step, where the plaintiff bears the ultimate burden of proof on the issue of discrimination, we first must provide the proper context to this appeal.

■ The initial onus in the *McDonnell Douglas* analysis rests with plaintiff; he must establish the four elements of a

prima face case, *Newport Shipyard, Inc.*, 484 A.2d at 898, which vary depending upon whether the alleged discrimination was a termination, failure to promote, or failure to hire, *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir.1994). In a failure to hire case such as this one, the applicant must prove: (1) he is a member of the protected class, in this case at least forty years old; (2) he applied for an open position; (3) he was not selected; and (4) the employer "filled the position by hiring another individual with similar qualifications." *Gu v. Boston Police Department*, 312 F.3d 6, 11 (1st Cir.2002). The burden of the prima facie case "is not especially onerous." *Barros*, 710 A.2d at 685. For purposes of the summary judgment motion, defendants agree that plaintiff met this initial burden.

■ Establishment of the prima facie case creates a rebuttable presumption that defendants' failure to hire him constituted unlawful discrimination. *Barros*, 710 A.2d at 685. The second step in this analysis requires defendants to articulate a legitimate, nondiscriminatory reason for not hiring the applicant. *Id.* This is a burden of production rather than persuasion; once

defendant produces a legitimate, nondiscriminatory reason for not hiring the applicant, then the presumption created by the prima facie case "disappears." *Id.*

■ In their motion for summary judgment, defendants offered several reasons for not hiring plaintiff. Two different council members said plaintiff interviewed poorly because "he seemed to have a bit of a chip on his shoulder" and he did not display "the attributes * * * favorable for a town employee, particularly a public works utilityman * * *." The plaintiff concedes on appeal[2] that this deposition testimony is evidence of a legitimate, nondiscriminatory reason that satisfies defendants' burden of production. Thus, we proceed to the third step of the *McDonnell Douglas* analysis.

■ The ultimate question in a Title VII action, and, accordingly, RIFEPA and RICRA actions, is "discrimination *vel non.*" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 518, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75

**2.** While admitting that defendants met their burden, plaintiff argues that the motion justice improperly considered other deposition testimony about the legitimate, nondiscriminatory reason. The motion justice, in rendering her decision, referenced the deposition of the town administrator, who stated "I've been told that he didn't interview well and he came off as surly and obnoxious." The fact that the town administrator did not have input into the decision not to hire plaintiff may not permit him to articulate a legal reason for not hiring the plaintiff. Nonetheless, we see no meaningful difference between qualifying plaintiff as "surly" and having "a chip on his shoulder." Since a member of the council with actual input into the decision not to hire plaintiff proffered the "chip on his shoulder" reason, the motion justice's reference to "surly" in rendering a decision does not constitute error.

Furthermore, plaintiff argues that the "surly" reason should not be considered by the motion justice because it "qualifies unequivocally as hearsay." Although evidence of a reason for not hiring an applicant must be admissible under the rules of evidence to qualify as a legitimate, nondiscriminatory reason, *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 & n. 9, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), plaintiff's conclusion on the issue of hearsay is tenuous. An extrajudicial statement only qualifies as hearsay when it is offered to prove the truth of the matter asserted. *State v. Grayhurst*, 852 A.2d 491, 504 (R.I.2004). A strong argument can be made that the "surly" statement is not offered for its truth, i.e. that plaintiff was, in fact, surly and obnoxious, but rather to prove the council member's impressions concerning plaintiff's interview. Thus, plaintiff's hearsay argument carries no weight.

L.Ed.2d 403 (1983)). To prove discrimination, plaintiff must prove that defendants' legitimate, nondiscriminatory reason for not hiring him was merely pretext (which would mean that the real reason for not hiring plaintiff was unlawful animus). *Barros,* 710 A.2d at 685. Proof of discrimination does not require evidence of the "smoking-gun" variety.[3] *Id.* (quoting *Resare v. Raytheon Co.,* 981 F.2d 32, 42 (1st Cir.1992)). Alternatively, proof that a reason for not hiring plaintiff was pretextual is insufficient, on its own, to support a finding of discrimination. *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742. We recognized that the middle ground between proof of a "smoking gun" and proof of pretext alone lies "in situations in which the elements of a sufficient prima facie case combine with the fact[-]finder's belief that the basis for dismissing the employee was pretextual, particularly if 'accompanied by a suspicion of mendacity.'" *Barros,* 710 A.2d at 685 (quoting *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742). This allows the fact-finder "to infer the ultimate fact of intentional discrimination." *Id.* (quoting *Hicks,* 509 U.S. at 511, 125 L.Ed.2d 407). In fact, our application of *Hicks* in *Barros* parallels *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (en banc) (holding "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").

■ The plaintiff's primary argument on appeal asserts that a genuine issue of material fact exists about whether he was not hired because of a poor interview that was a pretext for age-based animus because that justification is subjective. In his brief, plaintiff argues that summary judgment is not appropriate when "a proffer of purely subjective reasons for a * * * failure to hire decision leaves an employee without any objective criteria to point to in order to show competence and leaves the court without any objective, ascertainable criteria to evaluate."[4] Several federal courts, although not prohibiting granting summary judgment in favor of a defendant-employer after it has proffered a subjective legitimate, nondiscriminatory reason, have said such subjective reasons should be scrutinized because of their "susceptibility to discriminatory abuse."

---

**3.** The plaintiff asserts on appeal that the motion justice erred in requiring him to present direct evidence of discrimination and directs us to page six of the motion transcript. Although plaintiff is correct that requiring direct evidence would constitute error, page six refutes plaintiff's factual assertion. The motion justice described the evidence plaintiff needed to survive summary judgment as an "extra little piece of *circumstantial evidence.*" Although she suggested that types of direct evidence would help plaintiff prove his case, the motion justice in no way required proof of discrimination by direct evidence.

The plaintiff also mischaracterizes the motion justice's ruling by arguing that she required plaintiff to produce statistical evidence of discrimination to survive summary judgment. Instead, the motion justice used statistical evidence as an example of the kind of evidence that would allow plaintiff to survive summary judgment. Neither the motion justice's statements, nor this opinion, should be read to imply that statistical evidence is required to prove discrimination in a disparate treatment discrimination suit.

**4.** The Eleventh Circuit vacated the opinion plaintiff quotes in support of this argument. *Chapman v. AI Transport,* 180 F.3d 1244 (11th Cir.1999). Upon rehearing *en banc* in 2000, the Eleventh Circuit implicitly rejected the language of the panel opinion when it held "[a] subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason." *Chapman v. AI Transport,* 229 F.3d 1012, 1033 (11th Cir.2000) (en banc). We can find no federal case that bars the granting of summary judgment in favor of the defendant after that defendant has proffered a subjective legitimate, nondiscriminatory reason.

*Bell v. Bolger,* 708 F.2d 1312, 1319–20 (8th Cir.1983); *see also Garrett v. Hewlett–Packard Co.,* 305 F.3d 1210, 1218 (10th Cir.2002) (stating "[c]ourts view with skepticism subjective evaluation methods" of employees by employers); *Bergene v. Salt River Project Agricultural Improvement Power and District,* 272 F.3d 1136, 1142 (9th Cir.2001) (noting the subjective nature of the criteria used to promote others instead of the plaintiff could be considered in proving pretext). That, however, does not end the inquiry.

■ The reality of the interview process must be considered when analyzing a subjective legitimate, nondiscriminatory reason in *failure to hire* cases; employers, when interviewing multiple applicants, often must make quick judgments based on first impressions. For example, the Eleventh Circuit identified an applicant's poor appearance as an appropriate reason for not hiring someone for a wait-staff position, even though that reason was subjective, as long as defendant articulates a "clear and reasonably specific" factual basis upon which it based its subjective opinion. *Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir.2000) (en banc) (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Here, the "chip on the shoulder" deposition testimony of the council members provides the factual basis which supports the subjective "poor interview" justification. Although we understand that subjective legitimate, nondiscriminatory reasons could potentially mask discriminatory animus when proffered in failure to hire cases, they do not necessarily warrant a finding of pretext.

Furthermore, this case is distinguishable from our decision in *Barros,* in which we upheld the finding of the Rhode Island Commission for Human Rights (commission) that an employer had discriminated against a woman based on her gender in firing her after she became pregnant. *Barros,* 710 A.2d at 686–87. There, we relied heavily upon the commission's finding that the employer deviated from its own policies and procedures in firing the plaintiff. *Id.* at 686. Although plaintiff argues that defendants' decision to interview additional applicants for the second utilityman position constituted a deviation from their hiring procedures, defendants' letter to plaintiff explaining the procedure stated that the town conducted additional interviews after applicants removed their names from consideration "[i]n order to comply with the hiring provisions * * * [mandating] the field of eligible candidates must total *at least* five." (Emphasis added.) In addition, the hiring of Loughlin, a non-Portsmouth resident, did not constitute a deviation because the language of the town's rules and regulations does not require the town to hire its residents but merely states they "shall be given preference." Finally, defendants' decision to automatically place plaintiff on the list of applicants for the second utilityman position further evidences its adherence to its own hiring procedures. Thus, even when analyzing the record in the light most favorable to plaintiff, defendants clearly adhered to their hiring policies and procedures in interviewing and then hiring Loughlin instead of plaintiff.

■ Summary judgment is appropriate at this stage of the *McDonnell Douglas* analysis when no reasonable jury could infer intentional discrimination from all the evidence including plaintiff's prima facie case. *Waterhouse v. District of Columbia,* 298 F.3d 989, 992–93 (D.C.Cir.2002). When analyzing the discovery materials and deposition testimony, plaintiff is left with the fact that defendants hired two people (a twenty-eight-year-old man with a comparable test score and a thirty-eight-

year-old man with a lower test score) rather than a fifty-two-year-old man to support an inference that defendants discriminated against plaintiff based on his age. We conclude that these facts alone do not amount to competent evidence that defendants committed age discrimination. The town's decisions to hire applicants other than plaintiff because they had more favorable interviews are not "accompanied by [the] suspicion of mendacity" referred to in *Hicks* that warrants an inference of discrimination. *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742. Thus, we agree with the motion justice's assessment that plaintiff cannot prove the poor interview justification is a pretext for age discrimination. As a practical matter, we refuse to make an employer, when interviewing an applicant within a protected class who happens to interview poorly, choose between hiring an applicant despite a poor interview and defending an employment discrimination lawsuit.

We hold that the plaintiff has not met his burden under the third step of the *McDonnell Douglas* analysis by offering proof that the defendants' proffered reason for not hiring him was mere pretext, which would allow for an inference that the defendants discriminated against him based on his age.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.